UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-127-FDW

| | |
|---|---|
| GEORGE VICTOR STOKES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>K. JOHNSON, et al., )<br>)<br>Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on the following motions: a Motion for Summary Judgment by Defendants Kurt Johnson, Thomas Plummer, and Felicia McAdon, (Doc. No. 32), and Plaintiff's Motion for Order Overruling Objections to Production and Compelling Discovery, (Doc. No. 57).

### I. BACKGROUND

### A. Procedural Background

Pro se Plaintiff George Victor Stokes is a North Carolina inmate currently incarcerated at the Cherokee County Detention Center in Murphy, North Carolina. Plaintiff filed this action on March 11, 2016, under 42 U.S.C. § 1983, alleging that his First Amendment rights were violated when he was placed in disciplinary detention in retaliation for filing grievances against supervisory officials while Plaintiff was incarcerated as a pre-trial detainee at the Mecklenburg County Jail ("the jail"). (Doc. Nos. 1, 24-1). On July 19, 2016, this Court conducted a frivolity

1

review and allowed the claim to proceed against all Defendants.[1]  (Doc. No. 7).

On June 28, 2017, Defendants Johnson, McAdon, and Plummer filed the pending summary judgment motion.  (Doc. No. 32).  Attached to summary judgment materials are the Declaration of jail Captain Kristie Graham attesting to the grievances submitted by Plaintiff; the jail's handbook regarding grievance forms; Plaintiff's grievances from January 16 and January 23, 2015; the Declaration of Defendant Kurt Johnson; Johnson's incident report; the Notice of Disciplinary Hearing; and Plaintiff's Waiver/Disciplinary Hearing Disposition.  See (Doc. No. 32-1).

On July 18, 2017, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  (Doc. No. 36).  After receiving an extension of time, Plaintiff has filed a response to the summary judgment motion, which includes his own Declaration sworn under penalty of perjury, a "statement of disputed factual issues," his grievances, Defendants' responses to Plaintiff's request for production of documents, and Plaintiff's attachment to his Complaint.  See (Doc. No. 50).

Furthermore, on October 3, 2017, Plaintiff filed the pending "Motion for Order Overruling Objections to Production and Compelling Disclosure," in which he seeks an order from the Court overruling the objections filed by Defendants in response to various requests for production of documents submitted by Plaintiff.  Plaintiff's motion will be denied for the reasons

---

[1] Plaintiff originally named Defendants as John Does.  On April 13, 2017, Plaintiff filed a motion to amend the Complaint, in which he identified the moving Defendants by name.  (Doc. No. 24, 24-1).

stated in Defendants' brief in response to the motion to compel. That is, Defendants have shown that Defendants have produced documents responsive to Plaintiff's requests, except for those that are overbroad, unduly burdensome, or not relevant to Plaintiff's claim.

**B.**     **Factual Background**

The evidence on summary judgment shows the following:

Plaintiff was a pretrial detainee at the Mecklenburg County Jail in 2014 and 2015. (Doc. No. 1 at p. 3). According to Plaintiff, he filed several grievances against "supervisory officials" at the jail. (Id.). Jail records reflect that Plaintiff filed fourteen total grievances from 2014 to 2015, and nine grievances before January 15, 2015. (Doc. No. 32-2 at ¶ 5: Graham Dec.; Attachment B to Graham Dec.). The only grievances Plaintiff filed against "supervisory officials" before January 15, 2015, were on September 5, 2014, against "Captain Gooding" for placing Plaintiff in "full restraints," and on September 8, 2014, against "the County and its officials" for removing Plaintiff from "DDU" and placing him in "full restraints" in "retaliation for filing complaints and grievances against staff and its administration."[2] (Doc. No. 32-4 at 3, 4: Attachment 1B to Graham Dec.). According to Plaintiff, Defendant Johnson, a detention officer at the jail, told Plaintiff that "since you like filing grievances against my boss, I'm going to teach you a lesson, and make sure you're kept in lock-up for a long time." (Doc. No. 1 at 3).

According to Defendants' evidence on summary judgment, on January 15, 2015, Johnson was the Pod supervisor in Pod 5600, and Plaintiff asked Johnson if he could speak with a supervisor concerning pod shakedowns. (Doc. No. 32-6 at ¶ 3: Johnson Dec.). Johnson asked his supervisor, Sergeant Currin, if Currin would speak with Plaintiff. (Id.). Currin replied that

---

[2] The other grievances address medical issues and library privilege issues.

3

he couldn't speak with Plaintiff immediately, but would speak with him as soon as he could. (Id.). Johnson informed Plaintiff that Currin would talk with Plaintiff later in the day. (Id. at ¶ 4). According to Johnson, Plaintiff then warned him that Plaintiff would kill officers if they conducted shakedowns again. (Id.). Johnson submitted an incident report on January 15, 2015, informing Sergeants Currin and Nesbitt about Plaintiff's threat. (Doc. No. 32-7). The incident report stated as follows:

> I was assigned the duties of pod supervisor in Pod 5600 on 15 January 2015. At approximately 0855 Inmate Stokes, George #440161 asked to speak with a Supervisor. I notified Sergeant Currin that Inmate Stokes was requesting to speak with the Sergeant. Sergeant Currin indicated that he would speak with Inmate Stokes in due time but was currently busy with staff breaks. I went to Inmate Stokes' cell to inform him that Sergeant Currin was currently unavailable but was notified and would be in to talk to him later in the day. At that time Inmate Stokes asked me to pass along the following information:
>
>> 'If ya'll come in her harassing me again I'm going to get my Bloods involved. I can orchestrate hits without using the mail. I can get in touch with my Bloods through the toilet and have anyone of y'all killed just like the CO I had dealt with in prison. I will have my Bloods from the street follow y'all home and have them dealt with. This is fucking harassment and I'm fucking tired of the shit. The next time ya'll come in here harassing me, shaking me down day in and day out without judge cause, shit is going down. I'm not playin' anymore.'
>
> Sergeant Currin and Sergeant Nesbitt were both notified of the threats made towards the staff. It was determined that Inmate Stokes would be placed on DDU status due to the serious threats mace towards the staff. Again I went over to explain to him his new status and he had the following to say:
>
>> 'Look J, I don't give a fuck about none of the shit you're talking about. Right now they're winning but in the end I will win. It doesn't matter what status I'm on or what they put in the paper. They can't stop me from doing what I'm gonna do. J, I understand that ya'll have jobs to do and that these fucking shakedowns aren't under yall's control. I don't want the Sergeants, Captaisn or Cos, I want the fucking Major. He's the mother fucker that has ya'll coming in here on day shift shaking us down, then against on night shift and then again the next fucking morning. Imma put a stop to that mother fucker. I want the fucking major, that's who I want. I don't know his name or what he looks like but I will find out, that ain't

4

> no problem. My Bloods will be waiting for him outside ready to follow him home and he's gonna be done. Write that shit down.'
>
> Sergeant Currin was notified again about the continued threats. Inmate Sokes will be placed in single cell confinement pending a disciplinary hearing. Inmate Stokes was cleared for single cell confinement by Nurse Brooks.

(Id. at 2-3). Currin and Nesbitt determined that these comments amounted to threats against staff, and that Plaintiff would be placed in disciplinary detention. (Doc. No. 32-6 at ¶ 5).

Johnson informed Plaintiff that he was on disciplinary detention status, and Plaintiff again made threatening remarks towards jail staff. (Id. at ¶ 6). Plaintiff was charged with threatening jail staff, and he had a disciplinary hearing on January 16, 2015. (Id. at ¶¶ 7-8; Doc. No. 32-9: Ex. C to Johnson Dec.). Plaintiff pled not guilty. (Doc. No. 32-6 at ¶ 8; Doc. No. 32-9 at 2).[3] Johnson did not participate in the disciplinary hearing. (Doc. No. 32-6 at ¶ 7). Plaintiff was found guilty on February 9, 2015, and received 25 days of confinement in disciplinary detention. (Doc. No. 32-6 at ¶ 8; Doc. No. 32-9 at 2). Plaintiff alleges that Johnson's incident report about Plaintiff's threats was false and that Johnson wrote it because Plaintiff submitted grievances against Johnson's "bosses." (Doc. No. 1 at p. 3). Plaintiff also alleges that Defendants Plummer, the "Jail Commander for Security" and McAdon, the "Jail Chief for Security," failed to take disciplinary action against jail employees for their retaliatory conduct. (Doc. No. 1 at pp. 3-4; Doc. No. 24-1 at pp. 1-3).

As a result of the January 15, 2015, incident, Plaintiff filed a grievance on January 16, 2015, against "Officer John Doe" for a "false misbehavior report," as well as a grievance on January 23, 2015, alleging that his procedural due process rights were violated at the disciplinary

---

[3] Plaintiff did not deny asking to speak to Sergeant Currin, or cursing at Johnson, but denied arguing after telling Johnson to get the sergeant. (Doc. No. 32-9 at 2).

hearing. (Doc. No. 32-2 at ¶ 6; Attachment C to Graham Dec.). Plaintiff did not file any grievance against Plummer or McAdon. (Id. at ¶ 6). However, Plaintiff alleges that Plummer and McAdon denied his grievance against Johnson. (Doc. No. 1 at pp. 4).

In his own sworn Declaration opposing the summary judgment motion, Plaintiff denies that he threatened the lives of officers or that he told Johnson he would contact "Bloods" to have employees killed if the pod shakedowns continued. Plaintiff states, as follows, in his sworn Declaration: "After filing several grievances against supervisor officials regarding deprivation of equal protection and free association, Johnson told me, 'Since you like filing grievances against my boss, I'm going to teach you a lesson, and make sure you're kept in lock-up for a long, long time.'" (Doc. No. 50 at 6). Plaintiff further alleges that, "contrary to defendants declaration, Johnson knew about my grievances against his superiors." (Id.). He also asserts that

> [c]ontrary to defendants' declaration, I never asked Johnson to pass along a message threatening the lives of jail officers, nor did I ever state that I would get my 'bloods' to kill jail employees. Johnson made up these false allegations against me in retaliation to have me wrongfully punished for filing [] grievances . . . . I asked Johnson, 'Who told you about my grievances?' and he refused to answer. Instead, he said, 'You gonna learn,' and left. Johnson then wrote a incident/misbehavior report falsely accusing me of threatening supervisory officials in retaliation to teach me a lesson for filing grievances against his boss. Contrary to defendants' declaration, Johnson's writing of the false report led to the cause of the disciplinary action . . . . Johnson's writing of this false incident/misbehavior report led Sergeant Currin in charging me with threatening staff in violation of Rule A-11 . . . . At the disciplinary hearing I pled not guilty and indicated to the officer that me and Johnson had a[n] argument about him and another officer taking a cup out of my cell and that the only thing I said to Johnson is to get the fucking sergeant. I also indicated that Johnson had made up the allegations against me in retaliation for filing grievances.

(Id. at 7).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

6

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

#### A. Plaintiff's Claims against Defendants in their Official Capacities

7

First, to the extent that Plaintiff has sued any of the Defendants in their official capacities, a local government may be held liable under 42 U.S.C. § 1983 only if the plaintiff proves a "policy or custom" of the entity was a moving force behind a violation of constitutional rights. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 694 (1978). A suit against a defendant in his official capacity is a claim against the local government employer, in this case the Mecklenburg County Jail. Generally, the failure to allege a specific policy or custom is fatal to an official capacity claim against a government unit such as the jail. See Alvarez v. Corr. Med. Servs., Inc., Civ. No. WDQ-10-179, 2015 WL 7012654, at *5 (D. Md. Nov. 12, 2015). Here, Plaintiff has not alleged that the jail has a policy or custom of retaliating against inmates for filing grievances. Thus, to the extent that Plaintiff has sued Defendants in their official capacities, Plaintiff's official capacity claim against Defendants fails.

**B. Plaintiff's Retaliation Claim against Defendants Plummer and McAdon in their Individual Capacities**

To recover on a First Amendment retaliation claim, Plaintiff must prove: (1) that he engaged in protected First Amendment activity, (2) that the defendants took some action that adversely affected his First Amendment rights, and (3) that there was a causal relationship between the protected activity and the defendants' conduct. Tobey v. Jones, 706 F.3d 379, 387 (4th Cir. 2013); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005). To establish a causal connection, Plaintiff must show that the defendants were aware that he engaged in protected activity. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). "Knowledge alone, however, does not establish a causal connection" between the protected activity and the adverse action. Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). The causal element requires the plaintiff to show that the

8

defendant knew about the protected activity and that there was a temporal proximity between the protected activity and the alleged retaliation so as to suggest a causal connection. Constantine, 411 F.3d at 501. The Fourth Circuit Court of Appeals recently held that inmates have a clearly established First Amendment right to be free from retaliation for filing grievances. Booker v. South Carolina Dep't of Corrrs., 855 F.3d 533, 546 (4th Cir. 2017).

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action in order to further the efficient administration of justice. Id.

In Woodford v. Ngo, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524).

9

At the time of Plaintiff's incarceration, the jail had a policy concerning inmate grievances. (Doc. No. 32-2 at ¶ 2). Although Plaintiff filed a grievance against a "John Doe,"—which was clearly referring to Defendant Johnson—he never filed a grievance against either McAdon or Plummer. (Id. at ¶ 6). The grievance against "John Doe," dated January 16, 2015, states: "After filing several prior grievances against Major Plummer and Captain Goode, Officer John Doe told me that since I like filing grievances against his administrators that he was going to teach me a lesson and have me placed in DDU. He then wrote a false misbehavior report falsely accusing that I had threatened staff. I was found guilty of the alleged threating behavior at the disciplinary hearing. As a result of Officer Doe writing the false misbehavior report, I was given time in punitive segregation. My first Amendment right to petition." (Doc. No. 32-5 at 2). In Plaintiff's verified statement concerning exhaustion, he only lists the January 16, 2015, grievance against "Officer John Doe" and a March 23, 2016, letter to McAdon disagreeing with the grievance officer's response. (Doc. No. 4 at pp. 5-6). Here, although Plaintiff was not required to name Plummer and McAdon in the grievances, these Defendants were simply not put on notice that Plaintiff had any grievances against them. See Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008) (noting that a grievance does not have to mention a defendant specifically by name as long as the grievance gives the defendant fair notice of the claim). In sum, the evidence on summary judgment shows that Plaintiff failed to exhaust his administrative remedies as to his claim against Defendants McAdon and Plummer. Thus, these Defendants are entitled to summary judgment on this basis alone.

The Court next finds that, even if Plaintiff had exhausted his administrative remedies as to Defendants Plummer and McAdon, these two Defendants would be entitled to summary judgment on the merits. First, Plaintiff has presented no evidence on summary judgment

suggesting that either of these Defendants was involved in either the incident leading up to the disciplinary detention or the disciplinary detention decision itself. Plaintiff's sole theory of liability is that McAdon and Plummer are liable due to the positions they held in the jail. Although they were both supervisors, there is no evidence that McAdon and Plummer had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, that their response was inadequate, and that there was a causal link between their conduct and Plaintiff's injury to support a supervisory liability claim. See Slakan v. Porter, 737 F.2d 368, 372-3 (4th Cir. 1984). Thus, even if Plaintiff had exhausted his administrative remedies as to these two Defendants, his retaliation claim against them would fail on the merits.

Finally, in addition, Plummer and McAdon cannot be held liable merely because they ruled against his grievance filed against Johnson. See (Doc. No. 1 at p. 4). "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation." George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); see also Booker, 855 F.3d at 541 ("An inmate … cannot bring a § 1983 claim alleging denial of a specific grievance process.").

C. **Plaintiff's Retaliation Claim against Defendant Johnson in His Individual Capacity**

In support of his First Amendment retaliation claim against Defendant Johnson, Plaintiff contends that Johnson falsified charges against Plaintiff in retaliation for submitting grievances against Johnson's supervisors, and that Plaintiff was subsequently sent to disciplinary detention. (Doc. No. 1 at pp. 4-5). In support of the summary judgment motion, Johnson asserts in his sworn Declaration that he did not know that Plaintiff filed a grievance against Gooding and other officers four months before writing the statement leading to Johnson's placement in disciplinary

11

detention. (Doc. No. 32-6 at ¶ 9). Johnson contends that Plaintiff has, therefore, not shown a temporal proximity to suggest a causal connection between Plaintiff's filing of grievances and his placement in the disciplinary detention unit. Second, Johnson notes that he played no role in Plaintiff's placement in disciplinary detention; rather, he merely reported the incident to his supervisor, wrote a statement, and played no role in the disciplinary hearing or adjudication. (Id. at ¶ 7). Defendant Johnson also contends that Plaintiff was placed in the disciplinary detention unit because of his threats to officers. According to Johnson's Declaration, after Plaintiff asked to speak with a supervisor, Sergeant Currin informed Johnson that he would speak with Plaintiff later because he was currently busy with covering staff breaks. (Id. at ¶ 3). Johnson contends that Plaintiff then threatened the lives of officers if shakedowns continued, and stated that he would contact "Bloods" to have jail employees killed the pod shakedowns continued. (Id. at ¶ 4). Johnson further asserts that when he told Plaintiff that he was going to the disciplinary detention unit, Plaintiff again issued threats to jail staff, and threatened to get his "Bloods" to kill jail staff. (Id. at ¶¶ 5-6).

As noted, in his own sworn Declaration opposing the summary judgment motion, Plaintiff denies that he threatened the lives of officers or that he told Johnson he would contact "Bloods" to have employees killed if the pod shakedowns continued. Plaintiff further attests, in his Declaration: "After filing several grievances against supervisor officials regarding deprivation of equal protection and free association, Johnson told me, 'Since you like filing grievances against my boss, I'm going to teach you a lesson, and make sure you're kept in lock-up for a long, long time.'" (Doc. No. 50 at 6). Plaintiff further alleges that, "contrary to defendants declaration, Johnson knew about my grievances against his superiors." (Id.). The record on summary judgment, thus, has two

12

opposing statements by the parties, and a credibility determination is required to settle the matter. That is, a fact-finder could believe Plaintiff's sworn statement that he never made the threats that Johnson asserts he made, and the fact-finder could also believe Plaintiff's sworn statement that Johnson threatened Plaintiff that he would punish him for filing grievances against Johnson's supervisors, thus showing that Johnson knew about the grievances, contrary to Johnson's sworn assertion that he was not aware of them.[4] The claim against Defendant Johnson is, therefore, not appropriately resolved on summary judgment, and Plaintiff's retaliation claim against Johnson must therefore be tried before a jury.

## IV. CONCLUSION

In sum, for the reasons stated herein, the summary judgment motion is denied as to Defendant Johnson.[5] The summary judgment motion is granted as to Defendants Plummer and McAdon.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 32), is **DENIED** as to Defendant Johnson and **GRANTED** as to Defendants Plummer and McAdon. Trial must proceed as to Plaintiff's retaliation claim against Johnson.

2. Plaintiff's Motion for Order Overruling Objections to Production and Compelling

---

[4] The Court further finds that the fact that Johnson himself did not bring the disciplinary proceedings against Plaintiff is not dispositive. That is, according to Plaintiff, Johnson fabricated the charges, which resulted in disciplinary proceedings against Plaintiff. The fact that other officers may have initiated the actual disciplinary proceedings does not bar Plaintiff's retaliation claim against Johnson.

[5] The Court, therefore, will inquire into appointing counsel for Plaintiff at this stage in the proceedings.

13

Discovery, (Doc. No. 57), is **DENIED**.

Signed: January 4, 2018

Frank D. Whitney
Chief United States District Judge